11 Civ. 1217 (PGG) (JCF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HOPETON MINOTT,

Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE OFFICER
JAMES DUFFY, SHIELD # 09737, POLICE OFFICER
ARLENE GONZALEZ, SHIELD # 436, POLICE
OFFICER DARRYL HARRIS, SHIELD # 25137,
POLICE OFFICER JOSE BRIZUELA, SHIELD # 1200,
SERGEANT SEAN GELFAND, SHIELD # 276,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS CITY OF NEW YORK, POLICE
OFFICER JAMES DUFFY, POLICE OFFICER
ARLENE GONZALEZ, POLICE OFFICER DARYL
HARRIS, POLICE OFFICER JOSE BRIZUELA AND
SERGEANT SEAN GELFAND'S MOTION TO
DISMISS**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Brenda E. Cooke*
*Tel: (212) 513-0462*
*Matter No. 2011-006884*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................... 3

STANDARD OF LAW.................................................................................... 10

ARGUMENT

      POINT I

           PLAINTIFF HAS FAILED TO STATE A CLAIM
           AGAINST DEFENDANTS RELATED TO HIS
           ARREST AND SUBSEQUENT PROSECUTION .................................. 12

               1.   There Was Probable Cause for Plaintiff's
                     Arrest.................................................................................. 12

               2.   Plaintiff's  Malicious Prosecution Claim
                     Fails as There Was Probable Cause for His
                     Arrest and Prosecution................................................... 17

      POINT II

           PLAINTIFF FAILS TO STATE A CLAIM
           AGAINST DEFENDANT CITY OF NEW YORK ................................. 19

      POINT III

           DEFENDANTS DUFFY, GONZALEZ, HARRIS,
           BRIZUELA AND GELFAND ARE ENTITLED
           TO QUALIFIED IMMUNITY ............................................................. 21

CONCLUSION.............................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

Ambrose v. City of New York,
   623 F. Supp. 2d 454 (S.D.N.Y. 2009)................................................................. 10

Ashcroft v. Iqbal,
   129 S. Ct. 1937 (2009)........................................................................................ 10

Baker v. McCollan,
   443 U.S. 137 (1979)............................................................................................ 15

Bernard v. United States,
   25 F.3d 98 (2d Cir. 1994)............................................................................... 18, 19

Bradway v. Gonzales,
   26 F.3d 313 (2d Cir. 1994)................................................................................. 21

Brass v. Am. Film Techs., Inc.,
   987 F.2d 142 (2d Cir. 1993)............................................................................... 11

Carthew v. County of Suffolk,
   709 F. Supp. 2d 188 (E.D.N.Y. 2010) ............................................................... 17

Chambers v. Time Warner, Inc.,
   282 F.3d 147 (2d Cir. 2002)........................................................................ 10, 11

Conopco, Inc. v. Roll Int'l,
   231 F.3d 82 (2d Cir. 2000)................................................................................. 10

City of Canton v. Harris,
   489 U.S. at 385 .................................................................................................. 20

Curley v. Vill. of Suffern,
   268 F.3d 65 (2d Cir. 2001)....................................................................... 14, 15, 17

Curry v. City of Syracuse,
   316 F.3d 324 (2d Cir. 2003)............................................................................... 12

Deniran v. Mattingly,
   2009 U.S. Dist. LEXIS 28888 (S.D.N.Y. Mar. 30, 2009) ......................................... 3

Devenpeck v. Alford,
   543 U.S. 146 (2004)........................................................................................... 12

Finigan v. Marshall,
   574 F.3d 57 (2d Cir. 2009)................................................................................. 15

**Cases**                                                                                          **Pages**

Green v. Montgomery,
    219 F.3d 52 (2d Cir. 2000).................................................................................. 18-19

Harris v. Howard,
    No. 08 Civ. 4837, 2009 U.S. Dist. LEXIS 105860 (S.D.N.Y. Oct. 23, 2009) ........................ 11

Husbands v. City of New York,
    335 Fed. Appx. 124 (2d Cir. June 30, 2009)............................................................. 13

Illinois v. Gates,
    462 U.S. 213 (1982).......................................................................................... 13

Int'l Audiotext Netword, Inc. v. AT&T Co.,
    62 F.3d 69 (2d Cir. 1995)............................................................................. 10, 11

Jaegly v. Couch,
    439 F.2d 149 (2d Cir. 2006).......................................................................... 12, 15

Kennedy v. Empire Blue Cross & Blue Shield,
    989 F.2d 588 (2d Cir. 1993).............................................................................. 11

LaDoucier v. City of New York,
    No. 10 Civ. 05089 (RJH), 2011 U.S. Dist. LEXIS 61379
    (S.D.N.Y. June 6, 2011)................................................................................. 17-18

LaFontaine v. City of New York,
    08 CV 1555 (MHD), 2009 U.S. Dist. LEXIS 105838
    (S.D.N.Y. Sept. 30, 2009),
    adopted by, 2009 U.S. Dist. LEXIS 95626............................................................ 19

Lennon v. Miller,
    66 F.3d 416 (2d Cir. 1995)............................................................................... 21

Little v. Massari,
    526 F. Supp. 2d 371 (E.D.N.Y. 2007) .................................................................. 17

Michigan v. DeFillippo,
    443 U.S. 31 (1979).......................................................................................... 13

Miloslavsky v. AES Eng'g Soc'y, Inc.,
    808 F. Supp. 351 (S.D.N.Y. 1992) ..................................................................... 14

Monell v. Department of Social Services,
    436 U.S. 658 (1978)..................................................................................... 19, 20

**Cases**                                                                                    **Pages**

Morillo v. The City of New York,
   No. 95 Civ. 2176 (JSM), 1997 U.S. Dist. LEXIS 1665
   (S.D.N.Y. February 19, 1997)............................................................................... 18

Murphy v. Lynn,
   118 F.3d 938 (2d Cir. 1997)................................................................................... 18

Panetta v. Crowley,
   460 F.3d 388 (2d Cir. 2006)................................................................................... 15

Pearson v. Callahan,
   129 S. Ct. 808 (2009)............................................................................................. 21

Puckowitz v. City of New York,
   No. 09 Civ. 6035 (PGG), 2010 U.S. Dist. LEXIS 97733
   (S.D.N.Y. Sept. 17, 2010)...................................................................................... 17

Ricciuti v. N.Y.C. Transit Auth.,
   124 F.3d 123 (2d Cir. 1997)....................................................................... 13, 15. 20

Ricciuti v. N.Y.C. Transit Authority,
   941 F.2d 119 (2d Cir. 1991)................................................................................... 17

Russo v. City of Bridgeport,
   479 F.3d 196 (2d Cir. 2007)................................................................................... 12

Samuels v. Air Transp. Local 504,
   992 F.2d 12 (2d Cir. 1993)..................................................................................... 10

Savino v. City of New York,
   331 F.3d 63 (2d Cir. 2003)..................................................................................... 18

Segal v. City of New York,
   459 F.3d 207 (2d Cir. 2006)................................................................................... 20

Sheridan v. Dubow,
   92 Civ. 6024 (LJF), 1993 U.S. Dist. LEXIS 12197
   (S.D.N.Y. August 30, 1993) .................................................................................. 11

Singer v. Fulton County Sheriff,
   63 F.3d 110 (2d Cir. N.Y. 1995)....................................................................... 12, 13

Spagnola v. Chubb Corp.,
   574 F.3d 64 (2d Cir. 2009)..................................................................................... 10

**Cases**                                                                          **Pages**

Trinidad v. City of New York,
    CV-06-3002 (BMC (LB), 2006 U.S. Dist. LEXIS 5 1776
    (E.D.N.Y. July 7, 2006) .................................................................................... 20

United States v. Delossantos,
    536 F.3d 155 (2d Cir. 2008) .............................................................................. 13

United States v. Fama,
    758 F.2d 834 (2d Cir. 1985) .............................................................................. 15

United States v. Webb,
    623 F.2d 758 (2d Cir. 1980) .............................................................................. 15

Vasquez v. City of New York,
    99 Civ. 4606 (DC), 2000 U.S. Dist LEXIS 8887
    (S.D.N.Y. June 29, 2000) ............................................................................ 11, 18

Washpon v. Parr,
    561 F. Supp. 2d 394 (S.D.N.Y. 2008) ............................................................... 12

Webster v. City of New York,
    333 F. Supp. 2d 184 (S.D.N.Y. 2004) ............................................................... 20

West v. Atkins,
    487 U.S. 42 (1988) ............................................................................................. 3

Whren v. United States,
    517 U.S. 806 (1996) .......................................................................................... 13

Zellner v. Summerlin,
    494 F.3d 344 (2d Cir. 2007) ........................................................................ 13, 21

**Statutes**                                                                    **Pages**

42 U.S.C. §1983,........................................................................... 1, 3, 12, 19, 20

Fed. R. Civ. P. 12(b) ............................................................................... 11

Fed. R. Civ. P. 12(b)(6)............................................................... 2, 10, 11, 22

Fed. R. Civ. P. 56 ............................................................................ 2, 11

P.L. 170.10 ....................................................................................... 14

P.L. 170.25.................................................................................. 1, 3, 9, 14

P.L. 110/155.35............................................................................ 1, 3, 9, 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

HOPETON MINOTT,

                                                          Plaintiff,

                          -against-

THE CITY OF NEW YORK, POLICE OFFICER JAMES
DUFFY, SHIELD # 09737, POLICE OFFICER ARLENE
GONZALEZ, SHIELD # 436, POLICE OFFICER
DARRYL HARRIS, SHIELD # 25137, POLICE
OFFICER JOSE BRIZUELA, SHIELD # 1200,
SERGEANT SEAN GELFAND, SHIELD # 276,

                                                          Defendants.

------------------------------------------------------------------------x

**MEMORANDUM OF LAW
IN SUPPORT OF
DEFENDANTS CITY OF
NEW YORK, POLICE
OFFICER JAMES DUFFY,
POLICE OFFICER ARLENE
GONZALEZ, POLICE
OFFICER DARYL HARRIS,
POLICE OFFICER JOSE
BRIZUELA AND SERGEANT
SEAN GELFAND'S MOTION
TO DISMISS**

11 Civ. 1217 (PGG) (JCF)

## PRELIMINARY STATEMENT

Plaintiff Hopeton Minott brings this action pursuant to 42 U.S.C. § 1983, and the

Fourth, and Fourteenth Amendments to the United States Constitution, alleging violations of his

civil rights in connection with his November 25, 2009 arrest and prosecution for Criminal

Possession of a Forged Instrument in the Second Degree in violation of P.L. § 170.25 and

Attempt to Commit Grand Larceny in the Third Degree in violation of P.L. §§ 110/155.35.

Plaintiff filed his original complaint on February 22, 2011, filed a first amended complaint on

May 20, 2011 (See Plaintiff's First Amended Complaint, (hereinafter "FAC", annexed to the

November 10, 2011 Declaration of Brenda E. Cooke (hereinafter "Cooke Decl.") as "Exhibit

A"), and filed a second amended complaint on October 7, 2011. (See Plaintiff's Second

Amended Complaint (hereinafter "SAC", annexed to the Cooke Decl. as "Exhibit B")  In the

second amended complaint, plaintiff asserts claims against defendants City of New York and

Officer James Duffy, Officer Arlene Gonzalez, Officer Daryl Harris, Officer Jose Brizuela, and

Sergeant Sean Gelfand (hereinafter "defendants") for false arrest and false imprisonment, and malicious prosecution. (See Exhibit B, SAC, at ¶¶ 21-37.) However, plaintiff's claims fail because there was probable cause for plaintiff's arrest, as established by the allegations of a complaining witness. Specifically, on November 25, a Chase bank employee contacted the defendant officers and informed them that plaintiff and a female individual were inside the Chase bank attempting to cash a forged check. (See NYPD Omniform System Criminal Complaint, annexed to the Cooke Decl. as "Exhibit E"; Criminal Court Complaint, annexed to the Cooke Decl. as "Exhibit G".) Further, on December 1, 2010, a grand jury returned a true bill against plaintiff and his co-arrestee, Shirley Lindsay. (See Grand Jury Indictment, annexed to the Cooke Decl. as "Exhibit H".) Even assuming, arguendo, that plaintiff has stated a claim against the defendant police officers, they are nonetheless entitled to qualified immunity. Finally, as plaintiff has failed to allege any claim of municipal liability against the City of New York, the City must be dismissed as a defendant. Accordingly, defendants now move to dismiss plaintiff's second amended complaint in its entirety, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FED. R. CIV. P."), or in the alternative pursuant to Rule 56.

**STATEMENT OF FACTS**

Plaintiff brings this action alleging claims of false arrest and false imprisonment, and malicious prosecution.[1] Plaintiff's claims stem from his arrest on November 25, 2009, by members of the New York City Police Department ("NYPD"), for Criminal Possession of a Forged Instrument in the Second Degree in violation of section 170.25 of the Penal Law, and Attempt to Commit Grand Larceny in the Third Degree in violation of sections 110/155.35 of the Penal Law. Plaintiff alleges that on November 25, 2009, he was driving his car with an acquaintance, "Raheem", and Shirley Lindsay as passengers. (See Exhibit A, FAC, at ¶ 11; Exhibit B, SAC, at ¶ 11.) Plaintiff had agreed to drive "Raheem" and Lindsay from Brooklyn into Manhattan. (Id.) Around 11 a.m., Lindsay asked plaintiff to stop at the Chase bank on Third Avenue near 31st Street in Manhattan. (See FAC, Exhibit A, at ¶ 11; SAC, Exhibit B, at ¶ 12.) This Chase bank branch, located at 450 Third Avenue, was equipped with video surveillance and following plaintiff's arrest, the District Attorney's Office for New York County subpoenaed the video from the date and time of the crime. (See 1/12/10 Certified Letter from Chase Bank Regarding Subpoena Duces Tecum, Enclosing CD-Rom of Surveillance Videos (hereinafter "Surveillance Videos"), annexed to the Cooke Decl. as "Exhibit L.")

---

[1]   The first claim for relief in plaintiff's second amended complaint purports to state a claim for the deprivation of federal civil rights under 42 U.S.C. §1983, (See Exhibit B, SAC ¶¶ at 21-23.) but Section 1983 itself creates no substantive rights, it provides only a procedure for redress for the deprivation of rights established elsewhere. See Deniran v. Mattingly, 2009 U.S. Dist. LEXIS 28888, at *5 (S.D.N.Y. Mar. 30, 2009). In order to allege a viable Section 1983 claim, plaintiff must allege facts demonstrating that: (1) he suffered "the violation of a right secured by the Constitution and laws of the United States" and (2) "the alleged deprivation was committed by a person acting under the color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Accordingly, Defendants will address plaintiff's purported deprivation of his federal civil rights under Section 1983 in Defendants' discussion of plaintiff's false arrest and false imprisonment and malicious prosecution claims.

On November 25, 2009, at 10:50:37 a.m., Lindsay entered the Chase bank location at 450 Third Avenue and stopped at the table in the ATM vestibule to complete paperwork. (See Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit M"; see also Exhibit L, Surveillance Videos.)  Lindsay was wearing black pants, white tennis shoes, a white t-shirt and a black winter coat with a fur hood lined in bright pink fabric.  (Id.; see also Prisoner Movement Slip Photos, annexed to Cooke Decl. as "Exhibit C.")  By 10:51:44 a.m., Lindsay was standing in line waiting to speak with a bank teller.  (See Surveillance Video Snapshot, annexed to the Cooke Decl. as "Exhibit N"; see also Exhibit L, Surveillance Videos.) At 10:52:53 a.m., Lindsay was at the teller's window, and is observed completing additional paperwork.  (See Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit O"; see also Exhibit L, Surveillance Videos.)   Lindsay presented the teller with a New York State benefits card bearing Lindsay's name and picture, a deposit slip for $8,700.00 with Lindsay's name as the customer, and a counterfeit check from a Chase bank account belonging to customer Felix Rivera Dbz El Mamey, made out to Lindsay for $8,700 and endorsed by Lindsay.  (See NYS Benefit Card, Deposit Slip and Endorsed Forged Check, annexed to Cooke Decl. as "Exhibit D.")  At 10:55:14 a.m., Lindsay stepped aside from the teller's window while waiting for her transaction to be completed to allow the teller to assist another customer – a black man with short hair, wearing glasses and a long-sleeved, black and grey, horizontally striped shirt. (See Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit P"; see also Exhibit L, Surveillance Videos.)

At 11:00:43 a.m., plaintiff – wearing dark jeans, a black jacket and a black baseball cap and carrying a white cell phone – entered the ATM vestibule of the Chase bank and by 11:00:48 a.m. was standing in the doorframe of the bank branch facing the tellers' windows.

(See Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit Q"; see also Exhibit L, Surveillance Videos; Exhibit C, Prisoner Movement Slip Photos.)  At 11:00:47 a.m., Lindsay saw that plaintiff had entered the bank and was standing in the doorframe while holding a white cell phone.  (See Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit R"; see also Exhibit L, Surveillance Videos.)  Plaintiff is believed to have used the cell phone while he and Lindsay were in the bank.  (See Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit U"; see also Exhibit L, Surveillance Videos.)  Lindsay walked away from the teller's window to communicate with plaintiff.  (See Exhibit R, Surveillance Video Snapshots; see also Exhibit L, Surveillance Videos.)  At 11:00:52 a.m., Lindsay had joined plaintiff where he was standing, and the two walked together into and through the ATM vestibule area.  (See Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit S"; Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit T"; Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit U"; see also Exhibit L, Surveillance Videos.)  Plaintiff walked with Lindsay to the outer door of the Chase bank and lingered at the door with Lindsay for five seconds, until 11:01:06 a.m.  (See Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit V"; see also Exhibit L, Surveillance Videos.)   When plaintiff exited the bank at 11:01:07 a.m., he turned left (northbound) on Third Avenue.  (See Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit W"; see also Exhibit L, Surveillance Videos.)  Lindsay did not leave the bank with plaintiff; Lindsay walked back through the ATM vestibule to return to the teller's window.  (See Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit X"; see also Exhibit L, Surveillance Videos.)  The other bank customer at the teller's window with plaintiff observed the length of this interaction between plaintiff and Lindsay.  (See

Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit Y"; <u>see</u> <u>also</u> Exhibit L, Surveillance Videos.)

At 11:01:19 a.m., Lindsay had returned to the teller's window. (<u>See</u> Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit Z"; <u>see</u> <u>also</u> Exhibit L, Surveillance Videos.) Lindsay searched her coat pockets for her I.D., which she handed to the teller. (<u>See</u> Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit AA"; <u>see</u> <u>also</u> Exhibit L, Surveillance Videos.) Between 11:01:42 a.m. and 11:01:55 a.m. Lindsay and the other bank customer at the teller's window verbally communicated as well as made hand gestures towards the teller. (<u>See</u> Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit BB"; <u>see</u> <u>also</u> Exhibit L, Surveillance Videos.) Seconds later, at 11:01:59 a.m., Lindsay signaled with her hand that she was leaving the bank (<u>See</u> Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit CC"; <u>see</u> <u>also</u> Exhibit L, Surveillance Videos.), and by 11:02:02, Lindsay, without having successfully deposited the counterfeit check, abruptly left the bank, leaving behind the counterfeit check, deposit slip and her photo identification. (<u>See</u> Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit DD"; <u>see</u> <u>also</u> Exhibit L, Surveillance Videos.) Lindsay ran through the ATM vestibule, exited the bank and headed northbound on Third Avenue at 11:02:11 a.m. (<u>See</u> Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit EE"; <u>see</u> <u>also</u> Exhibit L, Surveillance Videos.) Contrary to plaintiff's assertion in his second amended complaint, the video surveillance clearly reveals that plaintiff and Lindsay <u>did</u> <u>not</u> walk out of the bank together. (<u>Compare</u> Exhibit B, SAC at ¶ 13, with Exhibit L, Surveillance Videos.) Further, Lindsay was arrested at a McDonald's after hiding in a restroom – without plaintiff – not while she was walking to the car with plaintiff. (<u>Compare</u> Exhibit B,

SAC at ¶ 13, with People's Voluntary Disclosure Form, annexed to the Cooke Decl. as "Exhibit J", identifying the arrest location of Lindsay as 480 Third Avenue – a McDonald's restaurant.)

On November 25, just before 11:00 a.m., Officers Duffy, Gonzalez, Harris and Brizuela, Anti-Crime unit officers from the 17th Precinct, received a call from an employee of the Chase bank located at 450 Third Avenue reporting that a female and a male were attempting to cash a forged check inside bank. (See Exhibit E, NYPD Omniform System Criminal Complaint.) At this time, these Anti-Crime officers had been actively addressing bank fraud in the area and had left their contact information at many bank branches within the confines of the 17th Precinct. The 17th Precinct is located at 167 East 51st Street, New York, NY, 10022, between Lexington and Third Avenues. Officers Duffy, Gonzalez, Harris and Brizuela immediately left the 17th Precinct and drove to the Chase bank at 450 Third Avenue. Upon arrival at the Chase bank location, Officer Harris, dressed in plainclothes (blue jeans, blue sweater and white tennis shoes) entered the bank at 11:03:04 a.m. (See Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit FF"; see also Exhibit L, Surveillance Videos.) The three other officers remained outside, making observations. At 11:03:13 a.m., Officer Harris approached the bank teller complainant, obtained information regarding plaintiff and Lindsay's physical descriptions, and learned that plaintiff and Lindsay had fled the bank less than a minute before Officer Harris had entered the bank. (See Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit GG"; see also Exhibit L, Surveillance Videos.) Upon hearing this information, Officer Harris realized that he and the other officers had seen plaintiff and Lindsay outside the bank when the officers arrived at the Chase bank location. At 11:03:23 a.m., Officer Harris ran out of the bank and turned left (northbound) onto Third Avenue. (See

Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit HH"; see also Exhibit L, Surveillance Videos.)

After communicating with Officer Harris, Officers Duffy and Gonzalez went northbound on Third Avenue, on the west side of the street, away from the bank, following where Lindsay had walked. The officers followed Lindsay into a McDonald's restaurant at 480 Third Avenue, and Lindsay was ultimately taken into custody after she briefly hid inside the restroom. (See Exhibit J, People's Voluntary Disclosure Form, identifying the arrest location of Lindsay as 480 Third Avenue – a McDonald's restaurant.) Meanwhile, plaintiff was observed crossing the street mid-block and was approaching a second male who was standing next to a waiting vehicle. When Officers Harris and Brizuela stopped and questioned plaintiff, the second male got into the driver's seat of the vehicle and sped off at a high rate of speed, traveling eastbound on East 32nd Street and then northbound (the wrong way) on Second Avenue. Plaintiff was arrested at the corner of 32nd Street and Third Avenue. (See NYPD Omniform System Arrest Form, annexed to the Cooke Decl. as "Exhibit F".) The second male was not apprehended. (See Exhibit G, Criminal Court Complaint; Exhibit E, NYPD Omniform System Complaint Form; Exhibit F, NYPD Omniform System Arrest Form.) The events which occurred at Chase bank on November 25, 2009, are consistent with the manner in which forgery and identity theft rings take place.

At 11:11:08 a.m., after plaintiff and Lindsay had been arrested, Officers Harris and Duffy returned to the Chase bank to speak with the bank teller. (See Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit II"; see also Exhibit L, Surveillance Videos.) The officers approached the bank teller and Officer Harris indicated that they were there to retrieve the counterfeit check, deposit slip and Lindsay's photo identification. (See Surveillance

Video Snapshot, annexed to the Cooke Decl. as "Exhibit JJ"; see also Exhibit L, Surveillance Videos.) Officers Duffy and Harris inspected the counterfeit check, deposit slip and Lindsay's photo identification. (See Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit KK"; see also Exhibit L, Surveillance Videos.) At 11:12:47 a.m., Officers Duffy and Harris left the bank, taking the counterfeit check, deposit slip and Lindsay's photo identification with them. (See Surveillance Video Snapshots, annexed to the Cooke Decl. as "Exhibit LL"; see also Exhibit L, Surveillance Videos; NYPD Property Clerk Invoices, annexed to the Cooke Decl. as "Exhibit I".)

Plaintiff and Lindsay were arrested and charged with Criminal Possession of a Forged Instrument in the Second Degree in violation of P.L. § 170.25 and Attempt to Commit Grand Larceny in the Third Degree in violation of P.L. §§ 110/155.35. (See Exhibit F, NYPD Omniform System Arrest Form; Exhibit G, Criminal Court Complaint; Exhibit H, Grand Jury Indictment.) At arraignment on November 26, 2009, bail was set for plaintiff, but plaintiff did not post bond and get released until January 6, 2010. (See Exhibit B, SAC, at ¶ 17.) Lindsay was released on her own recognizance. Plaintiff and Lindsay were indicted by a grand jury on December 1, 2009 and charged with Criminal Possession of a Forged Instrument in the Second Degree in violation of P.L. § 170.25 and Attempt to Commit Grand Larceny in the Third Degree in violation of P.L. §§ 110/155.35. (Id.; Exhibit H, Grand Jury Indictment.) In March 2010, following a defense motion, the criminal charges against plaintiff were dismissed. (See Certificate of Disposition of Dismissal, annexed to the Cooke Decl. as "Exhibit K"; see also Exhibit B, SAC, at ¶ 16.) Lindsay pled guilty to criminal possession of a forged instrument in violation of P.L. § 170.25 on June 2, 2010. (See 6/2/10 Transcript of Criminal Proceeding in People v. Lindsay, Indictment No. 5698-2009, annexed to the Cooke Decl. as "Exhibit MM".)

## STANDARD OF LAW

Defendants move to dismiss the second amended complaint pursuant to FED. R. CIV. P. (12)(b)(6).  Under FED. R. CIV. P. (12)(b)(6), a pleading may be dismissed for "failure to state a claim upon which relief can be granted."  Id.  In order to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "The Supreme Court has held that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Ambrose v. City of New York, 623 F. Supp. 2d 454, 463 (S.D.N.Y. 2009) (internal alterations and quotation marks omitted).  A court should therefore dismiss a complaint when it appears that a plaintiff has failed to plead a plausible claim of relief.  See Spagnola v. Chubb Corp., 574 F.3d 64, 67 (2d Cir. 2009).  Similarly, a motion under FED. R. CIV. P. (12)(b)(6) should be granted if an affirmative defense, or other reason barring relief, is apparent from the face of the complaint.  Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86-87 (2d Cir. 2000).

When determining the sufficiency of plaintiff's claim for Rule 12(b)(6) purposes a Court should consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken..." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993); see also Int'l Audiotext Netword, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam).  For purposes of dismissal, the complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  Chambers v. Time Warner,

Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (quoting Int'l Audiotext, 62 F.3d at 72).  Additionally, "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)," including arrest reports, criminal complaints, indictments, and criminal disposition data. Vasquez v. City of New York, 99 Civ. 4606 (DC), 2000 U.S. Dist LEXIS 8887, at *3 (S.D.N.Y. June 29, 2000) (citations omitted); see also, Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).  The Court may therefore take judicial notice of the documents annexed as Exhibits to the November 10, 2011 Declaration of Brenda E. Cooke as well as the facts contained therein.[2]  See, e.g., Harris v. Howard, No. 08 Civ. 4837 (CM), 2009 U.S. Dist. LEXIS 105860, at *5-*6 (S.D.N.Y. Oct. 23, 2009)  ("'it is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6),' including arrest reports, criminal complaints, indictments, and criminal disposition data."); Chambers, 282 F.3d at 153.

---

[2]   If "matters outside the pleading are presented to and not excluded by the court," the Court may *sua sponte* convert the motion to dismiss into a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 12(b); see also, Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588 (2d Cir. 1993) (affirming district court's conversion, pursuant to Fed. R. Civ. P. 12(b), of defendant's motion to dismiss into a Fed. R. Civ. P. 56 motion for summary judgment and subsequent dismissal of the complaint); Sheridan v. Dubow, 92 Civ. 6024 (LJF), 1993 U.S. Dist. LEXIS 12197, at *2 (S.D.N.Y. August 30, 1993).

**ARGUMENT**

**POINT I**

**PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DEFENDANTS RELATED TO HIS ARREST AND SUBSEQUENT PROSECUTION**

**1.     There Was Probable Cause for Plaintiff's Arrest**

Plaintiff's false arrest and false imprisonment claims against defendants fail because the allegations of an employee of Chase bank, which are corroborated by plaintiff's complaint and the bank surveillance video, establish probable cause for plaintiff's arrest.  In analyzing a Section 1983 claim for unconstitutional false arrest, federal courts look to the law of the state in which the arrest occurred.  See Russo v. City of Bridgeport, 479 F.3d 196, 203 (2d Cir. 2007); Washpon v. Parr, 561 F. Supp. 2d 394, 402 (S.D.N.Y. 2008).  Under New York law, the elements of a false-arrest claim are (1) that the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement;  (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  See Curry v. City of Syracuse, 316 F.3d 324, 335 (2d Cir. 2003); Weyant, 101 F.3d at 852.

The existence of probable cause is a complete defense to a false-arrest claim.  See Jaegly v. Couch, 439 F.2d 149, 152 (2d Cir. 2006).  Probable cause is determined at the time of the arrest, (see Devenpeck v. Alford, 543 U.S. 146, 153 (2004)) and exists when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  See Jaegly, 439 F.3d at 152 (citing Weyant, 101 F.3d at 852); see also Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. N.Y. 1995).  An arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence

of probable cause.  See Whren v. United States, 517 U.S. 806, 812-13 (1996) (reviewing cases).

"An arresting officer advised of a crime by a person who claims to be the victim, and who has

signed a complaint or information charging someone with the crime, has probable cause to effect

an arrest absent circumstances that raise-doubts as to the victim's veracity."  Singer, 63 F.3d at

119 (citations omitted).

It is well-established that "[p]robable cause to arrest exists when [police] officers

have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are

sufficient to warrant a person of reasonable caution in the belief that an offense has been or is

being committed by the person to be arrested."  Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir.

2007) (collecting cases).  Probable cause requires only a probability of criminal activity, not an

actual showing of criminal activity.  Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983).  Even

where the suspect was later acquitted of the charges for which he was arrested, that fact is

irrelevant to the determination of probable cause.  See Michigan v. DeFillippo, 443 U.S. 31, 36

(1979) ("The validity of the arrest does not depend on whether the suspect actually committed a

crime").  This is because "[t]he probable cause standard is far below that of reasonable doubt."

Husbands v. City of New York, 335 Fed. Appx. 124, 127 (2d Cir. June 30, 2009) (citing United

States v. Delossantos, 536 F.3d 155, 161 (2d Cir. 2008)).  "Thus, 'innocent behavior frequently

will provide the basis for a showing of probable cause; to require otherwise would be to *sub

silentio* impose a drastically more rigorous definition of probable cause than the security of our

citizens demands.'"  Delossantos, 536 F.3d at 161 (quoting Illinois v. Gates, 462 U.S. 213, 244

n.13 (1982)).  In evaluating these matters, a court considers the facts available to the police

officer at the time of arrest.  Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir.

1997).

It is well-settled that "[a] law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth." Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992); see also Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001). Moreover, "the veracity of citizen complaints who are the victims of the very crime they report to the police is *assumed*." Miloslavsky, 808 F. Supp. at 355 (emphasis added).

Here, it is undisputed that plaintiff was arrested following a Chase bank employee's complaint that plaintiff and Lindsay were attempting to cash a forged check. (See Exhibit F, NYPD Omniform System Arrest Form; Exhibit G, Criminal Court Complaint; Exhibit H, Grand Jury Indictment.) The allegations that the Chase bank employee made against plaintiff – that plaintiff was observed entering, remaining and exiting the Chase bank with Lindsay, and while at that Chase bank location Lindsay sought to cash a forged check in the amount of $8700 – support probable cause to arrest plaintiff for Criminal Possession of a Forged Instrument in the Second Degree in violation of P.L. § 170.25 and Attempt to Commit Grand Larceny in the Third Degree in violation of P.L. §§ 110/155.35. Under the New York Penal law, "[a] person is guilty of possession of a forged instrument in the second degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any forged instrument of a kind specified in section 170.10" (§ 170.25), and "[a] person is guilty of grand larceny in the third degree when he steals property and when the value of the property exceeds three thousand dollars." (§ 155.35.) Further, the New York Penal law provides that "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." § 110.00. In addition, the Chase bank employee's account is corroborated by the complaint plaintiff has filed in the instant action in

which he admits he was present in the Chase bank with Lindsay on November 25, 2009 (See Exhibit A, FAC at ¶ 11; Exhibit B, SAC at ¶ 13.), and by the Chase bank surveillance video. (See generally, Exhibit L, Surveillance Videos.)  Accordingly, plaintiff's arrest on November 25 was lawful and proper.

Once a police officer has a reasonable basis for concluding that there is probable cause to arrest, "he is not required to explore and eliminate every theoretically plausible claim of innocence for making an arrest." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997); United States v. Webb, 623 F.2d 758 (2d Cir. 1980).  Furthermore, probable cause is not negated simply because there may be an innocent explanation for the facts alleged, and "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." Panetta v. Crowley, 460 F.3d 388, 395-96 (2d Cir. 2006) (citing United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985).  The Second Circuit has repeatedly held that there is no affirmative duty imposed on police officers to investigate the factual merits of an arrest before effectuating a warrantless arrest.  See Finigan v. Marshall, 574 F.3d 57, 63 (2d Cir. 2009); Curley v. Village of Suffern, 268 F.3d at 70.  In particular, the Circuit has emphasized police officers do not have an affirmative duty to investigate the allegations made by a complaining witness prior to effectuating an arrest. See Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006); accord Baker v. McCollan, 443 U.S. 137, 145-46 (1979) (finding that arresting officers not required to investigate claim of mistaken identity or lack of requisite intent).

Here, the arresting officer had a complainant – Chase bank employee – before him who he found credible and who presented an account of observed events, which involved plaintiff.  The events are as follows:  Lindsay presented the teller with a New York State benefits card bearing Lindsay's name and picture, and a deposit slip and check in the amount of $8700,

endorsed by Lindsay. (See Exhibit D, NYS Benefit Card, Deposit Slip and Endorsed Forged Check; Exhibit G, Criminal Court Complaint; Exhibit L, Surveillance Videos; Exhibit O, Surveillance Video Snapshot.)   The teller believed the check presented by Lindsay to be fraudulent in that the check was printed on different and lower quality paper than authentic checks from Chase bank and lacked watermarks that would be present on an authentic check. (See Exhibit G, Criminal Court Complaint.)  The teller had Lindsay step aside and wait while the teller assisted another customer. (See Exhibit P, Surveillance Video Snapshots.)  While Lindsay was waiting, she continued to shift her weight side-to-side in an anxious manner, as she had been doing since she entered the bank and stood in the line to see a teller. (See Exhibit L, Surveillance Videos.)   A few minutes later, plaintiff entered the bank, but did not act in a manner typical for a bank customer; he did not use the ATM, he did not get in line to see a teller, nor did he approach the customer service counter. (See Exhibit Q, Surveillance Video Snapshots.)   Instead, plaintiff was observed standing in the entryway to the bank waiting for Lindsay, who quickly left the teller window area in order to communicate with plaintiff. (See Exhibit R, Surveillance Video Snapshots.)  When Lindsay approached plaintiff, it was apparent that the two individuals knew each other.  Plaintiff was holding a white cell phone to his ear and Lindsay and plaintiff walked out of the bank and into the ATM vestibule together. (See Exhibit S, Surveillance Video Snapshots; Exhibit T, Surveillance Video Snapshots; Exhibit U, Surveillance Video Snapshots.)  Further, when plaintiff and Lindsay got to the outer door of the bank, they paused and were observed communicating for at least 5 seconds before plaintiff exited onto Third Avenue. (See Exhibit V, Surveillance Video Snapshots.)   When Lindsay returned to the teller's window, she paced restlessly and stole glances toward the bank exit. (See Exhibit BB, Surveillance Video Snapshots; Exhibit CC, Surveillance Video Snapshots; Exhibit

L, Surveillance Videos.)   Finally, without having successfully completed her transaction, Lindsay abruptly fled the bank and left behind a check in the amount of $8700 and her photo identification.   (See Exhibit DD, Surveillance Video Snapshots; Exhibit EE, Surveillance Video Snapshots.)   On these facts, it was entirely reasonable for the Chase bank complainant to conclude that Lindsay and plaintiff were present at the Chase bank together on November 25, 2009, for the purposes of cashing a fraudulent $8700 check, and to have communicated that information to the police.

"To decide not to arrest plaintiff in the face of [a] sworn statement would have required [the officer] to go beyond [the complainant's] complaint, made under penalties of perjury, and weigh the credibility of both parties." Little v. Massari, 526 F. Supp. 371, 376 (E.D.N.Y. 2007).   Such an expansive view of the probable cause requirement has been rejected by the Second Circuit and the district courts therein. See, e.g., Ricciuti, 941 F.2d at 128; Curley, 268 F.3d at 70; Carthew v. County of Suffolk, 709 F. Supp. 2d 188 (E.D.N.Y. 2010); Little, 526 F. Supp. 2d 371.   In light of this, defendants submit that plaintiff's false arrest and false imprisonment claim fails.

**2.     Plaintiff's Malicious Prosecution Claim Fails as There Was Probable Cause for His Arrest and Prosecution**

Plaintiff's remaining claim related to his arrest on November 25, 2009, is for malicious prosecution, which fails if the Court determines that there was probable cause for his arrest. Puckowitz v. City of New York, No. 09 Civ. 6035 (PGG), 2010 U.S. Dist. LEXIS 97733 (S.D.N.Y. Sept. 17, 2010) (plaintiff's false arrest and malicious prosecution claims dismissed because the officers had probable cause to arrest him); LaDoucier v. City of New York, No. 10 Civ. 05089 (RJH), 2011 U.S. Dist. LEXIS 61379, at *18-*19 (S.D.N.Y. June 6, 2011) (dismissing all of plaintiff's claims, including false arrest, malicious abuse of process, malicious

prosecution, and municipal liability, because there was probable cause to arrest).  Under New York law, to establish a claim of malicious prosecution, a plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997).  As set forth supra, there was probable cause for plaintiff's arrest and prosecution, which is a complete defense to a claim of malicious prosecution in New York.  Manganiello, 612 F.3d at 161-62; Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).  As such, plaintiff has failed to state a claim relating to his arrest and prosecution.

Plaintiff's claim of malicious prosecution also fails because plaintiff was indicted by the grand jury on or about December 1, 2009, (See Exhibit A, FAC, at ¶ 13; Exhibit B, SAC, at ¶ 16; Exhibit H, Grand Jury Indictment.) and it is well-established law that a grand jury indictment provides a presumption that there was probable cause to prosecute.  See Bernard v. United States, 25 F.3d 98, 104 (2d Cir. 1994); Vasquez v. the City of New York, No. 99 Civ. 4606 (DC), 2000 U.S. Dist. LEXIS 8887 at *13 (S.D.N.Y. June 28, 2000); Morillo v. The City of New York, No. 95 Civ. 2176 (JSM), 1997 U.S. Dist. LEXIS 1665 at *14 (S.D.N.Y. February 19, 1997).  Therefore, plaintiff bears the burden of rebutting the presumption of probable cause that arises from his indictment.  See Savino, 331 F.3d at 73.  However, plaintiff has not pled any evidence that rebuts the presumption of probable cause, including any facts that the grand jury indictment was procured by police misconduct undertaken in bad faith.[3]  See Green v.

---

[3]  During the underlying criminal proceeding plaintiff's defense attorney moved for omnibus relief before the state court which conducted an *in camera* review of the grand jury minutes, and ultimately the court dismissed the charges against plaintiff.  (See Exhibit K, Certificate of Continued…

Montgomery, 219 F.3d 52, 60 (2d Cir. 2000), citing Bernard, 25 F.3d at 104.  In fact, it is apparent from the criminal court complaint, and known to plaintiff at the time he filed the present complaint, that it was the statements of the Chase bank employee that provided the District Attorney's Office with information that led to plaintiff's arrest and prosecution.  (See Exhibit G, Criminal Court Complaint.)  Finally, plaintiff has not alleged any facts sufficient to establish actual malice for defendants' actions.  Accordingly, plaintiff's malicious prosecution claim must be dismissed.

## POINT II

### PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DEFENDANT CITY OF NEW YORK

The second amended complaint does not expressly assert any § 1983 claims against the City, nor can it be fairly construed to allege any.  (See generally Exhibit B, SAC.)  Therefore, the City should be dismissed as a defendant to this action.  Nonetheless, to the extent plaintiff seeks to hold the City liable for his alleged false arrest and malicious prosecution, the amended complaint fails to articulate the grounds for municipal liability established in Monell v. Department of Social Services, 436 U.S. 658 (1978), and its progeny.  In Monell, the Supreme Court held that a municipality cannot be held vicariously liable under § 1983 for constitutional torts committed by its employees.  Id. at 694.  Rather, a plaintiff seeking to impose municipal

---

Disposition Dismissal.)  While dismissal of plaintiff's indictment may bear on a *prosecutor's* probable cause for pursuing the indictment, it does not foreclose defendants' reliance on the grand jury indictment to establish probable cause to prosecute.  See LaFontaine v. City of New York, 08 CV 1555 (SHS) (MHD), 2009 U.S. Dist. LEXIS 105838, at *25 n. 6 (S.D.N.Y. Sept. 30, 2009), adopted by, 2009 U.S. Dist. LEXIS 95626 (S.D.N.Y. Oct. 14, 2009).

liability must demonstrate that the constitutional harm suffered was the result of a municipal policy or custom.  Id. at 690-91; City of Canton v. Harris, 489 U.S. at 385.

The second amended complaint does not identify a policy or custom that existed at the time of the incident; rather, plaintiff alleges only a single incident involving actors below the policy-making level.  See SAC, Exhibit B; cf. Trinidad v. City of New York, CV-06-3002 (BMC)(LB), 2006 U.S. Dist. LEXIS 51776, at *8 (E.D.N.Y. Jul. 7, 2006) (citations omitted).  The second amended complaint is similarly devoid of any factual allegations that the alleged constitutional violation committed in the course of plaintiff's prosecution stemmed from any policy, practice, or custom of the City.  Cf. Webster v. City of New York, 333 F. Supp. 2d 184, 207 (S.D.N.Y. 2004) (granting summary judgment where "[t]he record. . . is barren of specific evidence demonstrating the existence of a municipal policy or custom. . . ").  Inasmuch as plaintiff's theory of liability could be based on the City's employment relationship with the defendant officers, his purported § 1983 claim against the City must also be dismissed because a municipality may not be held liable solely on the basis of *respondeat superior*.  See Monell v. Dep't of Soc. Servs., 436 U.S. at 690-91; City of Canton v. Harris, 489 U.S. at 385; Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 122 (2d Cir. 1991).  Finally, as discussed in Point I, supra, there was no violation of plaintiff's civil rights and therefore his claim of municipal liability fails on this ground as well.  Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (recognizing that a Monell claim is only cognizable where there is an underlying constitutional violation).

## POINT III

## DEFENDANTS DUFFY, GONZALEZ, HARRIS, BRIZUELA AND GELFAND ARE ENTITLED TO QUALIFIED IMMUNITY

The "doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted). Qualified immunity is applicable regardless of "whether a government actor's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (citations omitted). Further, a police officer is entitled to qualified immunity from a claim for arrest even without probable cause if: (1) it was objectively reasonable for the officer to believe that probable cause existed, or (2) officers of reasonable competence could disagree on whether there was probable cause. Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) (citations omitted). "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995) (emphasis added). The Second Circuit has deemed this complex yet forgiving standard "arguable probable cause." Zellner, 494 F.3d at 369.

Here, as set forth supra, the defendant officers had probable cause to arrest plaintiff. Even assuming, arguendo, that the defendant officers did not have probable cause to arrest plaintiff, the defendant officer's actions were nonetheless objectively reasonable because a Chase bank employee informed them that plaintiff was observed entering, remaining and exiting

the Chase bank with Lindsay, and while at that Chase bank location Lindsay sought to cash a forged check in the amount of $8700.  (See Exhibit G, Criminal Court Complaint; Exhibit F, NYPD Omniform System Arrest Form; Exhibit E, NYPD Omniform System Complaint Form.) Based on this information, reasonable officers could believe that there was probable cause for plaintiff's arrest and therefore defendants Duffy, Gonzalez, Harris, Brizuela, and Gelfand are entitled to qualified immunity with respect to plaintiff's claims resulting from his arrest and prosecution.

## CONCLUSION

For the foregoing reasons, defendants City of New York, Police Officer James Duffy, Police Officer Arlene Gonzalez, Police Officer Daryl Harris, Police Officer Jose Brizuela, and Sergeant Sean Gelfand's motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted.

Dated:      New York, New York
            November 10, 2011

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorney for Defendants City of New York, Police*
    *Officer James Duffy, Police Officer Arlene*
    *Gonzalez, Police Officer Daryl Harris, Police*
    *Officer Jose Brizuela, and Sergeant Sean Gelfand*
100 Church Street
New York, New York 10007
(212) 513-0462
bcooke@law.nyc.gov

By:    *Brenda E. Cooke*
       Brenda E. Cooke
       *Assistant Corporation Counsel*

cc:    Leo Glickman, Esq. (via First Class Mail)

22